**METCALF v
FRANKLIN ASPHALT PAVING CO**

Ohio Appeals, 2nd Dist, Franklin Co

No 2203.   Decided Dec 9, 1932

Dale D. Rapp and Adams, Cowan and Adams, Columbus, for plaintiff in error.

Hamilton & Kramer, Columbus, and Alexander S. Dombey for defendant in error.

ALLREAD, J.

There is no doubt in our minds as to the negligence of the Asphalt Company in maintaining its tool box at the point where the tool box stood and without lights thereon to enable motorists upon the highway to discover its location. The question is as to the negligence of Metcalf. The trial court held that the evidence was sufficient to show that Metcalf was negligent in not stopping his car upon the appearance of danger, or when it became apparent that the Marsh car would likely veer across the road and into the path of the Metcalf car. Both drivers testified that they were driving at practically the rate of 25 to 30 miles per hour prior to the accident. The following are extracts taken from the testimony of Metcalf: (Page 82).

"Q. Now as you neared that bridge can you tell us what happened? A. Well there was a—this machine going south and I was going north and there was—I could see something on the road, I couldn't tell just what it was at the time, and he swung around that at an angle and me, and then tried to straighten up—his left rear wheel hit my right front wheel."

On page 59:

"Q. Now, as you saw this car coming towards you, tell us what position on the road in regard to the sides of the road that he was driving. A. Why, he was driving over on the right side of the road, that is on his right.

"Q. Do you know about—can you estimate about how close, his right hand side? A. Oh, I would say about three feet from the edge of the road.

"Q. Did he continue in that same position up until what time? A. Well, he come within, I would say, twenty-five or thirty feet of that box, I heard his brakes squeak and he came up around that way and came at my machine at an angle and then tried to straighten it up and hit my machine."

Page 60:

"Q. (Continuing): At the time of the contact of the cars? A. Well I heard him put on his brakes. My judgment would be he was going around thirty miles an hour.

"Q. Do you know whether or not he slowed up any before the contact with the car? A. Oh yes, he—I heard him put on his brakes back of the box, I heard him put on his brakes, heard his brakes squeak."

Page 80:

"Q. Now you noticed this tool box when you were not far away from it? A. Seventy-five feet or a hundred feet."

On page 81 the following appears:

"Q. How fast were you going at that time? A. I was going around twenty-five or thirty miles an hour.

"Q. And when you first saw this tool box you were about one hundred feet away? A. Yes.

"Q. Where was this other car? A. I judge he was around a hundred and twenty-

five feet the other side of it when I was that far from the box.

"Q. All right, then what did you do? A. I proceeded on.

"Q. You proceeded on. Then what happened? A. Well, when I got on the bridge, why his machine was coming down this way and I heard him put on his brakes when he was about twenty-five or thirty feet, and he swung around that at an angle to me, why his machine went to straighten up, the back of his machine hit the front end of mine.

"Q. Now you didn't make any attempt to bring your car to a stop after you saw the tool box and this other machine coming in the opposite direction? A. No sir.

"Q. Tell the jury why you didn't. A. Well, my side of the road was clear and there was no obstruction in my way at all.

"Q. No other reason? A. Why none that I know of only I supposed—

"Q. No other reason that you know of. Now why didn't you bring your car to a stop then, because you didn't think it was necessary? A. I didn't think it was necessary, I heard his brakes squeak and I supposed he was stopping and anyway my side of the road was clear.

"Q. I will ask you if this question was not asked of you in Municipal Court: 'Now when you saw this box and you could stop your car in fifteen feet, why didn't you stop?' Answer: 'I didn't suppose he was going to cross over on my side of the road.' Did you testify to that? A. Yes.

"Q. Was there enough room for both cars to pass on that particular road at that particular time that night? A. I would say so.

"Q. I will ask you if there was not plenty? A. I would say there was plenty.

"Q. You would say there was plenty of room. And was there enough room for this car to pass on its own part of the road without coming on your side of the road? A. No sir.

"Q. There was not. All right, I will ask you this; if this question was not asked you during the same hearing and this answer was not given: 'Do you say there was room enough for you to go on your right side and he to go between on his side, was that right?' And the answer was 'Yes,' did you testify to that? A. Not between the center of the road and the box."

Again on page 84 is the following:

"Q. Now, Mr. Metcalf, I believe you testified that that tool box was about three or four feet away from that west abutment of that bridge? A. No, I said about twelve to eighteen inches away from the west end.

"Q. You did not testify it was three or four feet? A. No, sir.

"Q. Then in your opinion it was about a foot away from the bridge? A. I would say twelve to eighteen inches.

"Q. And you so testified in the lower court, did you not? A. Yes.

"Q. Now how wide was that tool box? A. I said it was five or six feet."

On page 86 the following appears:

"Q. Now the reason that you proceeded to travel on your side of the road was because you know there was sufficient room for two cars to pass at that point? A. Well, I didn't know it, I had no way of telling that there was.

"Q. You had no way of telling it. Then you are not sure? A. No, I didn't know—

"Q. And yet why did you continue to drive? A. I had my eyes on my right side of the road and no obstruction on my side of the road.

"Q. And you could stop your car at a distance of fifteen feet traveling at the rate you were that night? A. Yes.

"Q. And you observed this tool box when you were about one hundred feet away? A. Yes.

"Q. And all you had to do was put on your brake and stop within fifteen feet? A. Yes.

"Q. But you continued to go on, not knowing whether both cars could pass that bridge at that point? A. No, I didn't know.

"Q. Answer my question, is not that right? A. Yes.

"Q. And as a matter of fact the result of this accident was the fact that Mr. Marsh swerved clear over on your side of the road? A. Well, he came over at an angle, he didn't come across this way, and then when he went to straighten—

"Q. But he came over sufficiently that he hit you after your car was turned against the east abutment of that bridge? A. Yes.

"Q. And how much distance was there between the east side of the tool box and that abutment of the bridge? A. Well I really don't know, I don't know how wide the road was.

"Q. But there was plenty of room for two cars to pass? A. I wouldn't say there was plenty.

"Q. But you say you didn't know there was sufficient room for two cars to pass?

"THE WITNESS: No, I didn't know there

was sufficient room, no, but I presumed there was room enough for two machines."

Again on page 87, the same witness testifies as follows:

"Q. And you made no effort to bring your car to a stop until they came together? A. No, not that I know of. I might have put my foot on the brake, I don't remember.

"Q. You would know what you done on that particular moment? A. Not when it was done that quick. It was all that quick (snapping fingers), I couldn't say."

And again on page 93, the same witness testified as follows:

"Q. What is your answer? A. Well you asked me when he was back that way, I could say he was traveling thirty to thirty-five miles an hour, but when he came around that box I couldn't say, because it was done that quick."

This evidence is quoted at length because it is the testimony on the point upon which the trial court sustained a demurrer to the evidence. It must be kept in mind that Metcalf was driving his car upon the open and unobstructed half of the roadway. He was not bound as a matter of law in the first instance at least to stop his car because of any possibility that the driver upon the other side of the highway where a tool box was located would veer across. Until such action of the driver of the other car Metcalf had the right to pursue his course and drive at a reasonable rate of speed under the circumstances. It must be remembered that Marsh, the driver of the other car, came up to within a few feet of the tool box and then veered suddenly across the highway and struck Metcalf's car. Whatever was done by Metcalf would have to be done quickly and growing out of facts in connection with the driving of the Marsh car. It would be at the most a sudden emergency calling for quick action on the part of Metcalf.

We think the law does not exact this high degree of care on the part of Metcalf, and that it was a jury question as to whether Metcalf did the proper thing in the sudden emergency caused by Marsh veering across the middle line of the highway. This is especially true in view of the testimony of Metcalf to the effect that there was in his judgment room for two cars to pass beween the tool box and the opposite side of the road. Marsh, in turning and veering across the middle of the highway onto Metcalf's side of the road, was guilty of an act which Metcalf was not bound to contemplate.

The court should have allowed the case to go to the jury, which under the law had the right to determine upon the conflicting evidence as to whether the plaintiff, Metcalf, was or was not guilty of negligence in not anticipating that Marsh would cross over in front of the Metcalf car and in not stopping his car and allowing the Marsh car to pass over on the other side of the highway in safety.

For this error the judgment of the lower court must be reversed and cause remanded for a new trial.

Judgment reversed.

HORNBECK and KUNKLE, JJ, concur.